IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Scott Avant, | ) | Civil Action No.: 3:20-cv-01884-JMC |
| | ) | |
| Plaintiff, | ) | **ORDER AND OPINION** |
| | ) | |
| v. | ) | |
| | ) | |
| Ahern Rentals, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

Before the court is Plaintiff Scott Avant's Motion to Compel. (ECF No. 19.) Defendant Ahern Rentals Inc. ("Ahern") has entered a Response in Opposition to the Motion. (ECF No. 20.) Plaintiff maintains Defendant has failed to fully respond to several Interrogatories and Requests for Production ("RFPs"). (ECF No. 19-1 at 2-8.) After careful consideration of the record, the court **GRANTS** in part and **DENIES** in part the Motion to Compel as set forth below. (ECF No. 19.)

## I.     FACTUAL AND PROCEDURAL BACKGROUND[1]

Ahern, which is "North America's largest independently owned equipment rental company," "routinely hired" Southern Diesel Repair, LLC ("Southern Diesel") to complete "repairs on vehicles and trailers in Ahern's rental inventory." (ECF No. 1-1 at 2.) Plaintiff worked as a mechanic for Southern Diesel. *Id.* Ahern sought repairs on one of its "Trail King manufactured 'low boy' trailer[s]" but, because of a recent fire at Southern Diesel's garage, the repairs were to occur at "an unimproved lot consisting of dirt and gravel." (*Id.* at 2-3.) Ahern delivered the trailer to the unimproved lot. (*Id.* at 3.) Although Plaintiff did not know how to position a jack under the trailer due to its low height, an unnamed Ahern employee allegedly showed Plaintiff "how to elevate the trailer, by depressing the back ramp into the ground, using the trailer's hydraulic system

---

[1] The following allegations are taken from the Complaint. (*See* ECF No. 1-1.)

that was connected to the Ahern Rig" (*Id.* at 3.) Plaintiff later purportedly used this method to access the trailer's undercarriage. (*Id.*) Unfortunately, the hydraulics failed and the trailer collapsed on Plaintiff, causing him severe injuries. (*Id.* at 3-4.) Subsequently, Plaintiff filed suit against Defendant, alleging a negligence claim for failing to properly maintain its equipment or warn of its failure. (*See id.* at 4-5.) Currently, at issue is Plaintiff's Motion to Compel. (ECF No. 19.)

## II.     LEGAL STANDARDS

### A. Discovery Generally

Amended Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). The scope of discovery under Rule 26 is defined by whether the information sought is (1) privileged, (2) relevant to a claim or defense, and (3) proportional to the needs of the case. *E.g.*, *Gordon v. T.G.R. Logistics, Inc.*, Case No. 16-cv-00238-NDF, 2017 WL 1947537, at *2 (D. Wyo. May 10, 2017). "While the party seeking discovery has the burden to establish its relevancy and proportionality, the party objecting has the burden of showing the discovery should not be allowed and doing so through 'clarifying, explaining and supporting its objections with competent evidence.'" *Wilson v. Decibels of Or., Inc.*, Case No. 1:16-cv-00855-CL, 2017 WL 1943955, at *2 (D. Or. May 9, 2017) (quoting *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012) (internal citations omitted)).

A discovery request is relevant "if there is any possibility that the information sought might be relevant to the subject matter of [the] action." *Wilson*, 2017 WL 1943955, at *5 (quoting *Jones v. Commander, Kan. Army Ammunitions Plant*, 147 F.R.D. 248, 250 (D. Kan. 1993)). "Relevance is not, on its own, a high bar[,]" *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th

Cir. 2019), and "is construed very liberally." *Nat'l Credit Union Admin. v. First Union Capital Markets Corp.*, 189 F.R.D. 158, 161 (D. Md. 1999).

However, Rule 26(b)(1)'s "proportionality requirement mandates consideration of multiple factors in determining whether to allow discovery of even relevant information." *Gilmore v. Jones*, No. 3:18-CV-00017, 2021 WL 68684, at *3-4 (W.D. Va. Jan. 8, 2021) (citing *Jordan*, 921 F.3d at 188-89). Such considerations include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case. *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983 (4th Cir. 1992) ("the discovery rules are given 'a broad and liberal treatment'") (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). That said, discovery is not limitless and the court has the discretion to protect a party from "oppression" or "undue burden or expense." FED. R. CIV. P. 26(c).

### B. Motions to Compel

If a party fails to make a disclosure required by Rule 26, "any other party may move to compel disclosure and for appropriate sanction" after it has "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a). Specifically, a party "may move for an order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3)(B).

"[T]he party or person resisting discovery, not the party moving to compel discovery, bears

the burden of persuasion." *Oppenheimer v. Episcopal Communicators, Inc.*, No. 1:19-CV-00282-MR, 2020 WL 4732238, at *2 (W.D.N.C. Aug. 14, 2020); *see Basf Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*, No. 2:17-CV-503, 2019 WL 8108060, at *2 (E.D. Va. July 3, 2019) (citation omitted). "Thus, once the moving party has made 'a *prima facie* showing of discoverability,' the resisting party has the burden of showing either: (1) that the discovery sought is not relevant within the meaning of Rule 26(b)(1); or (2) that the discovery sought 'is of such marginal relevance that the potential harm . . . would outweigh the ordinary presumption of broad discovery.'" *Gilmore v. Jones*, No. 3:18-CV-00017, 2021 WL 68684, at *3-4 (W.D. Va. Jan. 8, 2021) (quoting *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016)).

The court has broad discretion in deciding to grant or deny a motion to compel. *See, e.g.*, *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995) ("This Court affords a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion.") (internal citation omitted); *Erdmann v. Preferred Research Inc.*, 852 F.2d 788, 792 (4th Cir. 1988); *LaRouche v. Nat'l Broad. Co.*, 780 F.2d 1134, 1139 (4th Cir. 1986) ("A motion to compel discovery is addressed to the sound discretion of the district court."); *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, No. 3:15-CV-03447-JMC, 2018 WL 573158, at *2 (D.S.C. Jan. 26, 2018).

### III.     ANALYSIS

Plaintiff insists Defendant did not adequately answer Interrogatories 11 through 14, and RFPs 1, 5, 6, and 10. (ECF No. 19-1 at 2-8.) In particular, Plaintiff points to Defendant's boilerplate objections and its assertions that it would "limit the scope of its response[s] accordingly." (*Id.* at 6-8.) Defendant counters it sufficiently responded to these inquiries as several of Plaintiff's

requests were irrelevant, overbroad, or burdensome, thus requiring its responses to be limited in scope. (ECF No. 20 at 3.) The court examines these contentions in turn.

### A. Discovery Requests

Courts have routinely found that a plaintiff in a civil litigation matter may obtain discovery concerning prior similar incidents, with reasonable limitations, if it is relevant to any matter raised in the litigation. *See Lyman v. Greyhound Lines, Inc.*, No. 2:20-CV-01812-DCN, 2021 WL 719904, at *3 (D.S.C. Feb. 24, 2021) (limiting discovery requests "to only those prior accidents that are similar to Lyman's alleged experience"); *see, e.g., Donovan v. Wal-Mart Stores, Inc.*, No. 4:11-CV-00885-JMC, 2012 WL 3025877, at *2 (D.S.C. July 24, 2012) (observing "Plaintiff has not articulated to the court how the discovery of dissimilar incidents would have any bearing on the matters raised in this case").

Further, when the moving party claims an opposing party maintains possession, custody, or control of certain responsive documents that have not been produced, the movant "must have a colorable basis for its belief that relevant, responsive documents exist and are being improperly withheld." *Susko v. City of Weirton*, 5:09-CV-0001, 2011 WL 98557, at * 4 (N.D. W. Va. Jan. 12, 2011). "Mere speculation that documents exist is insufficient to compel production."*Knisely v. Nat'l Better Living Ass'n, Inc.*, No. 3:14-CV-15, 2014 WL 12710395, at *2-3 (N.D. W. Va. Oct. 15, 2014) (compiling cases).

*(1) RFP 1 and Interrogatory 13*

RFP 1: "All documents, to include manuals, emails, and maintenance records, referring to Trail King [m]anufactured trailers in Ahern Rentals, Inc.'s inventory, from January 1, 2017[,] to present." (ECF No. 19-2 at 6.)

Interrogatory 13: "Describe any records or logs generated by Defendant regarding the maintenance of Ahern Rentals, Inc. vehicles and equipment from 2016 to present." (*Id.* at 4.)

Defendant's Responses: Ahern stated it produced "responsive records in its possession pertaining to the trailer in question. Ahern is continuing its reasonably diligent search for responsive records and will supplement its response to this request as appropriate." (*Id.* at 16, 21.) It further objected to these requests as overbroad, unduly burdensome, and irrelevant. (*Id.* at 16-17, 21-22.) As Defendant "rents a wide variety of inventory, the majority of which share no similarities in their mechanics, scope of use, or maintenance," Ahern stated it would "limit the scope of its responses accordingly." (*Id.*)

Plaintiff claims it has received "no maintenance records," instead obtaining only "work order invoices and some [third] party invoices." (ECF No. 19-1 at 3.) Plaintiff also emphasizes that he "knows he did not receive a full answer to Interrogatory 13" because he sought information related to all Ahern equipment and all Trail King trailers. (*Id.*)

By contrast, Defendant posits that information "relating to [the] maintenance of unrelated equipment . . . that bear no similarity to the trailer . . . in this case" are irrelevant. (ECF No. 20 at 4-5.) Regardless, Defendant maintains it "has produced numerous maintenance records," which take the form of purchase orders, invoices, check request forms, and related emails. (*Id.* at 8-9.) Defendant stresses the "logs" sought by Plaintiff simply do not exist, and it has produced such information as it is maintained.[2] (*Id.* at 9-10.)

---

[2] It is unclear to the court whether Defendant admits or denies it has fully responded to RFP 1 and Interrogatory 13, as Ahern states that "Plaintiff is not entitled to documents pertaining to other vehicles and equipment that are not substantially similar to the lowboy trailer," and claims it sufficiently "described the maintenance records in its possession in response to Interrogatory Number 13[.]" (ECF No. 20 at 7-10.)

6

Here, the court **GRANTS** in part and **DENIES** in part Plaintiff's Motion to Compel responses to Interrogatory 13 and RFP 1. The court agrees with Defendant that Interrogatory 13's request for certain information related to *all* of Ahern's inventory is overbroad. As observed by Ahern, it maintains a large quantity of inventory that is wholly unrelated to the instant claim, such as "air scrubbers, barriers, bolt cutters, booms, chain saws, cement finishers, compressors, dozers, excavators, forklifts, hedge trimmers, lawn mowers, loaders, motor graders, pallet jacks, personnel lifts, post hole diggers, rollers, roto-tillers, scissor lifts, street sweepers, stump grinders, tele-handlers, trenchers, weed eaters[,] and other handtools[.]" (ECF No. 20 at 5.) Moreover, Plaintiff has not explained how the maintenance of such dissimilar inventory would have any bearing on this case. The court therefore limits Interrogatory 13 in scope specifically to Trail King manufactured trailers or similar equipment in Ahern's inventory, rather than all of Ahern's inventory. By contrast, the court finds the request is otherwise appropriate, including the timeframe at issue, as the incident in question allegedly occurred in 2017.

Additionally, the information sought by RFP 1 appears relevant to the instant claims, as maintenance records for other Trailer King trailers owned by Ahern could indeed have some bearing on this case because Plaintiff alleges Defendant negligently maintained the trailer at issue. The court notes Defendant has not adequately shown how complying with this request would be unduly burdensome or disproportionate. Thus, to the extent it has not already done so, Defendant is **ORDERED** to fully respond to Interrogatory 13 as limited above, as well as RFP 1.

*(2) RFP 10 and Interrogatories 11 and 12*

RFP 10: "Any and all incident reports of injuries sustained by . . . patrons or customers or employees or contractors alleged arising from the use of Ahern Rentals, Inc. (**the entire entity,**

**not only the Columbia, SC location**) vehicles and equipment from 2016 to present involving an equipment failure." (ECF No. 19-2 at 7 (emphasis in original).)

Interrogatory 11: Identify any previous complaints, formal or informal, concerning injuries from Ahern Rentals, Inc. equipment and vehicles from 2016 to present (not to include injuries resulting from Motor Vehicle Collisions). For each complaint, please state: (a) the date of the complaint; (b) the nature of the situation complained of; and (c) the name and address of the person so complaining." (*Id.* at 3.)

Interrogatory 12: Identify any claims the Defendant has received or became aware of resulting from injuries of patrons or employees or contractors alleged to be suffered from the use of Ahern Rentals, Inc. (**the entire entity, not only the Columbia, SC location**) vehicles and equipment from 2016 to present involving an equipment failure. For each claim mentioned, state: (a) the date of alleged injury; (b) the date the claim was received." (*Id.* at 3-4 (emphasis in original).)

Defendant's Responses: For RFP 10, Defendant asserted it "has no documents responsive to this request." (*Id.* at 24.) For Interrogatories 11 and 12, Defendant stated it was "aware of no such complaints" or claims, and further objected to the request as overbroad, unduly burdensome, and irrelevant. (*Id.* at 16.) As Defendant "rents a wide variety of inventory, the majority of which share no similarities in their mechanics, scope of use, or maintenance," Ahern stated it would "limit the scope of its responses accordingly." (*Id.*)

Plaintiff alleges that, despite Defendant's representation to the contrary, Plaintiff discovered an accident caused by equipment failure after only "a cursory search along the counties on the I[-]95 corridor[.]" (ECF No. 19-1 at 4.) "Along with the other failures of responses listed

8

above," Plaintiff states he "cannot put his faith in the responses he received for" these discovery requests. (*Id.*)

Ahern claims the accident Plaintiff identified is irrelevant and was caused by human error rather than equipment failure; regardless, it has now produced materials surrounding the event. (ECF No. 20 at 6-7.) Defendant otherwise asserts it "diligently conducted a reasonable search for responsive records and found no other complaints, claims, or incident reports which arose from circumstances substantially similar to the case at bar." (*Id.* at 6.)

Here, the court **GRANTS** in part and **DENIES** in part the Motion to Compel responses to RFP 10 and Interrogatories 11 and 12, and again observes these discovery requests are overbroad. As discussed, Ahern maintains an array of diverse vehicles and equipment, and injuries or incidents stemming from inventory wholly dissimilar to the trailer at issue would in all likelihood be immaterial. Plaintiff has not explained how such information would be relevant. Although Defendant has represented it completed a narrower search using circumstances that are substantially similar to the instant incident, Ahern does not specify the parameters of the search it undertook. Thus, the court tailors these discovery requests in scope to Trail King manufactured trailers or similar equipment in Ahern's inventory, rather than all equipment in Ahern's inventory. Lastly, the court notes the requests are otherwise appropriate. Defendant is **ORDERED** to answer these requests as outlined above.

*(3) Interrogatory 14*

Interrogatory 14: "Describe any guidelines, instructions, or protocol in place regarding the inspection and/or maintenance of Ahern Rentals, Inc. on or about the date of the incident in the Complaint." (ECF No. 19-2 at 4.)

9

Defendant's Response: Ahern stated it "follows all Federal Motor Carrier Safety Administration regulations and guidelines applicable to the inspection and maintenance of commercial motor vehicles in Ahern's fleet." (*Id.* at 17.) It further objected to this Interrogatory as overbroad, unduly burdensome, and irrelevant. (*Id.*) As Defendant "rents a wide variety of inventory, the majority of which share no similarities in their mechanics, scope of use, or maintenance," Ahern stated it would "limit the scope of its responses accordingly." (*Id.*)

Plaintiff simply contends that, "[p]resumably, the guidelines, instructions, or protocol regarding [the] inspection and maintenance of Ahern . . . equipment on or about the date of the incident in the [C]omplaint should not only have been described, per the interrogatory, but also produced per Request for Production 1." (ECF No. 19-1 at 5.) Defendant does not appear to directly offer arguments regarding Interrogatory 14.

Here, the court **GRANTS** in part and **DENIES** in part the Motion to Compel a response to Interrogatory 14. This RFP is overbroad, as it seeks inspection or maintenance "guidelines, instructions, or protocol" of all Ahern equipment. As discussed, Ahern maintains a large, assorted inventory of rental equipment, and Plaintiff has not discussed how the information sought by this interrogatory would have any bearing on the case. Thus, the court tailors this request and limits Interrogatory 14 in scope to Trail King manufactured trailers or similar equipment in Ahern's inventory, rather than all of Defendant's inventory. The request is otherwise proper. Defendant is thus **ORDERED** to answer Interrogatory 14 as outlined above.

*(4) RFPs 5 and 6*

RFP 5: "Safety training documents for Ahern Rentals, Inc. employees['] use of vehicles and equipment at the time of the incident." (ECF No. 19-2 at 7.)

RFP 6: "Safety training documents for Ahern Rentals, Inc. employees['] use of vehicles and equipment at present." (*Id.*)

Defendant's Response: Ahern claimed it "has no documents responsive to [these] requests." (*Id.* at 23.) It further objected to this Interrogatory as overbroad, unduly burdensome, and irrelevant. (*Id.*) Because Defendant "rents a wide variety of inventory, the majority of which share no similarities in their mechanics, scope of use, or maintenance," Ahern stated it would "limit the scope of its responses accordingly." (*Id.*)

> As conveyed by Plaintiff:
>
> Ahern, on the front page of its website, states that it rents over 54,000 pieces of equipment nationwide. Ahern.com also states "Ahern Rentals is proud to be North America's largest independently owned rental company." In addition to that, it states that Ahern has "over 60 years experience." By the website, Ahern has 95+ locations in 34 states. And they claim there are zero safety documents. Zero. Even if our lawsuit were the only one in the history of Ahern, one would think that perhaps a pamphlet or email might have been sent out to employees to prevent any sort of thing happening in the first place.

(ECF No. 1-1 at 5-6.)

Defendant stresses Plaintiff's "contention is inaccurate and ignores or misapprehends Defendant's response. Defendant relies on the experience and recommendations of its maintenance and repair vendors and their diesel mechanics to safely perform service to Defendant's trailers upon request." (ECF No. 20 at 10.) Ahern adds that "[t]he absence of safety training documents for Defendant's employees' use of vehicles and equipment' has no relevance whatsoever to a claim or defense in this case." (*Id.*)

Here, the court **GRANTS** in part and **DENIES** in part the Motion to Compel responses to RFPs 5 and 6. Although Defendant disclaimed any responsive documents, it did so with the subsequent objection and caveat that it would limit its responses. It is unclear from Ahern's initial answer and subsequent briefing whether it is claiming it possesses no responsive documents to

11

RFPs 5 and 6; possesses such documents but believes they are irrelevant; or, after "limiting the scope of its responses" as stated in its objection, possesses no responsive documents. Regardless, the court finds materials sought by these RFPs are indeed relevant, as one of Plaintiff's allegations is that Defendant negligently failed to warn of the "potential for failure" of its equipment. (ECF No. 1-1 at 4.) However, for reasons discussed, safety training documents related to all vehicles and equipment is overbroad without any sufficient justification—thus, the court narrowly tailors the scope of these requests to Trail King manufactured trailers or similar equipment in Ahern's inventory, rather than all equipment in Ahern's inventory. The court again notes these requests are otherwise appropriate. Thus, Defendant is **ORDERED** to responsd to RFPs 5 and 6 as outlined above.[3]

B. <u>Sanctions</u>

Rule 37(c) allows for sanctions "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e)[.]" When deciding whether to impose sanctions, the court should examine "(1) whether a party violated a discovery order or Federal Rule of Civil Procedure; (2) whether the violation was 'harmless' or 'substantially justified;' and (3) which sanction is appropriate for the violation." *Certain Underwriters at Lloyd's, London Subscribing to Policy No.*

---

[3] Defendant also argues Plaintiff's Motion to Compel is untimely. (ECF No. 20 at 11-13.) Plaintiff does not respond to this contention. A party's failure to comply with the Local Civil Rules is sufficient to deny his or her motion. *See CresCom Bank v. Terry*, 269 F. Supp. 3d 708, 715 (D.S.C. 2017). Regarding Local Rule 37.01, the primary Local Rule at issue, "South Carolina district courts have 'discretion to consider an untimely motion to compel if the movant offers an acceptable explanation for the motion's tardiness.'" *CresCom Bank v. Terry*, No. 2:12-CV-00063-PMD, 2013 WL 3946222, at *2-3 (D.S.C. July 31, 2013) (quoting *U.S. ex rel. Becker v. Westinghouse Savannah River Co.,* 305 F.3d 284, 290 (4th Cir.2002)). Here, it appears Plaintiff's Motion to Compel may be untimely. Regardless, in its discretion the court shall review the merits of the Motion based upon the alleged lack of prejudice to Defendant. Moreover, the court observes that the parties continued to communicate and negotiate on discovery disputes up to—and beyond— the filing of the Motion.

*BO823PP1308460 v. AdvanFort Co.*, No. 1:18-CV-1421-TSE-TCB, 2019 WL 3366103, at *4 (E.D. Va. July 25, 2019) (quoting *Vir2us, Inc. v. Invincea, Inc.*, 235 F. Supp. 3d 766, 772 (E.D. Va. 2017)).

> When determining whether a violation was harmless or substantially justified,
>
> a district court *should be guided* by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence.

*Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014) (citation and internal marks omitted) (emphasis in original) (noting district courts retain "broad discretion" and are "not required to tick through each" factor).

The court must further determine the appropriate sanctions by reviewing "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Id.* (quoting *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998)).

Plaintiff asks for attorneys' fees and costs, as well as "other and further relief" the court finds appropriate. (ECF No. 19-1 at 8.) However, Plaintiff offers no additional argument on this matter, and Defendant likewise does not address it.

Here, the court declines to impose sanctions against Defendant at this time. The court does not believe Defendant acted in bad faith on these matters. Further, at least some justification exists for Defendant's behavior, as many of Plaintiff's discovery requests were in fact overbroad. Nor does the court find the prejudicial impact of or need for deterring Defendant's conduct necessitates sanctions, as the court believes this Order will sufficiently motivate all parties to conduct the

remainder of the pretrial process effectively, efficiently, and without unnecessary court intervention. The court thus declines to impose sanctions under Rule 37(c) against Defendant at this time.

### IV.     CONCLUSION

After careful consideration, the court **GRANTS** in part and **DENIES** in part Plaintiff's Motion to Compel as set forth herein. (ECF No. 19.) Defendant shall provide responses within fourteen (14) days of this Order's entry.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

May 5, 2021
Columbia, South Carolina