**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| Scott Avant, | ) | Civil Action No.: 3:20-cv-01884-JMC |
| | ) | |
| Plaintiff, | ) | **ORDER AND OPINION** |
| | ) | |
| v. | ) | |
| | ) | |
| Ahern Rentals, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

Before the court is Plaintiff's Second Motion to Compel.  (ECF No. 63.)  Defendant Ahern

Rentals has entered a Response in Opposition to the Motion (ECF No. 70), to which Plaintiff

replied (ECF No. 71).  For the following reasons, the court **GRANTS** the Motion (ECF No. 63)

as set forth below.

## I.      FACTUAL AND PROCEDURAL BACKGROUND[1]

Ahern, which is "North America's largest independently owned equipment rental

company," "routinely hired" Southern Diesel Repair, LLC ("Southern Diesel") to complete

"repairs on vehicles and trailers in Ahern's rental inventory."  (ECF No. 1-1 at 2.)  Plaintiff worked

as a mechanic for Southern Diesel.  (*Id.*)  Ahern sought repairs on one of its "Trail King

manufactured 'low boy' trailer[s]" ("Trailer").  (*Id.* at 3.)  Although Plaintiff did not know how to

position a jack under the trailer due to its low height, an unnamed Ahern employee allegedly

showed Plaintiff "how to elevate the trailer[] by depressing the back ramp into the ground, using

the trailer's hydraulic system that was connected to the Ahern Rig."  (*Id.*)  Plaintiff later

purportedly used this method to access the trailer's undercarriage.  (*Id.*)  Unfortunately, the

hydraulics failed and the trailer collapsed on Plaintiff, injuring him severely.  (*Id.* at 3-4.)

---

[1] The following allegations are taken from the Complaint.  (*See* ECF No. 1-1.)

Subsequently, Plaintiff filed suit against Ahern, alleging negligence for failing to properly maintain its equipment or warn of its failure. (*See id.* at 4-5.)

Plaintiff previously filed a motion to compel, in part, certain service and maintenance records for all vehicles and equipment in Ahern's inventory. (ECF No. 19.) Noting that service records are "relevant to the instant claims," the court ordered Ahern to produce the discovery but limited its scope to "Trail King manufactured trailers or similar equipment in Ahern's inventory, rather than all of Ahern's inventory." (ECF No. 41 at 7.) Plaintiff now contends Ahern failed to produce service records within the scope of the court's order. Specifically, Plaintiff identifies two broad categories of information which it believes Ahern has within its possession, but so far has refused to produce: (1) Scheduled Maintenance Forms ("SMFs") with completed checklists from mechanics who serviced the equipment in the past, which are stored in Ahern's "AS400" database (ECF No. 63-1 at 2-9), and (2) a physical file for the Trailer containing copies of Department of Transportation Driver's Vehicle Inspection Reports ("DVIRs") and Annual Inspection Reports ("AIRs"), which Plaintiff believes was preserved in the wake of this accident (*id*. at 9-13). Ahern counters that it has produced "thousands of pages of work orders and associated service records . . . which comprise the equipment maintenance history of the Trailer and similar Trail King trailers." (ECF No. 70 at 3.) Addressing the specific categories of records identified in Plaintiff's Motion, Ahern insists it has produced printed SMFs from its AS400 database which reflect whether each "step" on the checklist was completed in conjunction with a work order. (*Id*. at 6.) As to the physical file sought by Plaintiff, Ahern contends that no such physical file was preserved, because "Ahern was not on notice of a potential claim in 2017 nor asked to preserve a copy of a 2017 physical file" and that it cannot be expected to produce non-existent records. (*Id*. at 9-10.) Plaintiff responds that Ahern had notice of potential litigation in this case because within a few days of the

accident, it sent a corporate vice president to Columbia, South Carolina, to visit the accident site. (ECF No. 71 at 2-3.)

## II.      LEGAL STANDARDS

### A. **Discovery Generally**

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).  The scope of discovery under Rule 26 is defined by whether the information sought is (1) privileged, (2) relevant to a claim or defense, and (3) proportional to the needs of the case.  *See, e.g.*, *Gordon v. T.G.R. Logistics, Inc.*, No. 16-cv-00238-NDF, 2017 WL 1947537, at *2 (D. Wyo. May 10, 2017).  "While the party seeking discovery has the burden to establish its relevancy and proportionality, the party objecting has the burden of showing the discovery should not be allowed and doing so through 'clarifying, explaining and supporting its objections with competent evidence.'" *Wilson v. Decibels of Or., Inc.*, Case No. 1:16-cv-00855-CL, 2017 WL 1943955, at *2 (D. Or. May 9, 2017) (quoting *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012) (internal citations omitted)).

A discovery request is relevant "if there is any possibility that the information sought might be relevant to the subject matter of [the] action." *Wilson*, 2017 WL 1943955, at *5 (quoting *Jones v. Commander, Kan. Army Ammunitions Plant*, 147 F.R.D. 248, 250 (D. Kan. 1993)). "Relevance is not, on its own, a high bar[,]" *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019), and "is construed very liberally." *Nat'l Credit Union Admin. v. First Union Capital Markets Corp.*, 189 F.R.D. 158, 161 (D. Md. 1999).

However, Rule 26(b)(1)'s "proportionality requirement mandates consideration of multiple factors in determining whether to allow discovery of even relevant information." *Gilmore v. Jones*, No. 3:18-cv-00017, 2021 WL 68684, at *3-4 (W.D. Va. Jan. 8, 2021) (citing *Jordan*, 921 F.3d at 188-89). Such considerations include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Information within the scope of discovery need not be admissible in evidence to be discoverable." *Id.*

The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case. *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983 (4th Cir. 1992) ("the discovery rules are given 'a broad and liberal treatment'") (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). That said, discovery is not limitless, and the court has the discretion to protect a party from "oppression" or "undue burden or expense." Fed. R. Civ. P. 26(c).

**B. Motions to Compel**

If a party fails to make a disclosure required by Rule 26, "any other party may move to compel disclosure and for appropriate sanction" after it has "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a). Specifically, a party "may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B).

"[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." *Oppenheimer v. Episcopal Communicators, Inc.*, No. 1:19-cv-00282-MR, 2020 WL 4732238, at *2 (W.D.N.C. Aug. 14, 2020); *see Basf Plant Sci., LP v.*

*Commonwealth Sci. & Indus. Rsch. Org.*, No. 2:17-cv-503, 2019 WL 8108060, at *2 (E.D. Va. July 3, 2019) (citation omitted). "Thus, once the moving party has made 'a *prima facie* showing of discoverability,' the resisting party has the burden of showing either: (1) that the discovery sought is not relevant within the meaning of Rule 26(b)(1); or (2) that the discovery sought 'is of such marginal relevance that the potential harm . . . would outweigh the ordinary presumption of broad discovery.'" *Gilmore v. Jones*, No. 3:18-cv-00017, 2021 WL 68684, at *3-4 (W.D. Va. Jan. 8, 2021) (quoting *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016)).

The court has broad discretion in deciding to grant or deny a motion to compel. *See, e.g.*, *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995) ("This Court affords a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion.") (internal citation omitted); *Erdmann v. Preferred Research Inc.*, 852 F.2d 788, 792 (4th Cir. 1988); *LaRouche v. Nat'l Broad. Co.*, 780 F.2d 1134, 1139 (4th Cir. 1986) ("A motion to compel discovery is addressed to the sound discretion of the district court."); *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, No. 3:15-cv-03447-JMC, 2018 WL 573158, at *2 (D.S.C. Jan. 26, 2018).

## III.    ANALYSIS

### A.  SMFs

Plaintiff argues that no completed SMFs have been produced to date. Ahern disagrees, devoting a substantial part of its Response to explain that Plaintiff's understanding of Ahern's maintenance history records is misconceived, and that the required output from the AS400 system was printed and provided to Plaintiff. (ECF No. 70 at 4.) Ahern argues that the documents prove "not only that an annual DOT inspection of the Trailer was performed in 2017, but also that Ahern

performed its own [preventative maintenance inspection] ("Step #204") to the Trailer [] just weeks" before Plaintiff's injury. (*Id.* at 6 (citing ECF No. 70-1 at 12-14).)  Notably, both parties attach similar documents which appear to be printed from Ahern's AS400 system to support their arguments. (*See, e.g.*, ECF No. 70-1 at 12-14 and ECF No. 63-3 at 31-33.)  But without guidance, it is hard to determine what information is exactly contained on these coded forms.  For instance, the court cannot determine which portion of the document reflects the date on which the service at issue was performed in evaluating Ahern's argument that the inspection was performed a few weeks before Plaintiff was injured.[2]  (ECF No. 70 at 6-7.)  While the Lotspeich Declaration (ECF No. 70-1) provides some insight into various codes and abbreviations on the AS400 output forms, it is not immediately clear how all the documents are connected, and how Plaintiff can look at individual SMF checklists to determine when such services were performed.  Moreover, the parties only provided selected documents in conjunction with Plaintiff's Motion here.

The court's ruling on the fundamental discoverability of service records for the Trailer or other similar equipment in Ahern's inventory stands.  But just as Ahern must comply with the court's order to produce relevant documents, Plaintiff must "help himself" understand them.  Thus, to the extent Ahern has not produced service records within the scope of the original order (ECF No. 41 at 7) held within the AS400 system, it is ordered to do so now.

**B.  <u>Physical File</u>**

Plaintiff also contends that Ahern either possesses or improperly destroyed a physical file containing service records for the Trailer.  To the extent such a file remains in Ahern's possession, it must be produced in accordance with the court's order.  (*See* ECF No. 41 at 7.)  Ahern argues

---

[2] While a singular date appears near the top left corner of each form, Ahern explains that this represents "the date on which these records were printed from Ahern's computer system."  (ECF No. 70-1 at 5.)

that while such a file may have existed in the past, its contents would have been "replaced on a regular basis as new records are generated." (ECF No. 70 at 9.) Ahern explains that at any rate, "required service items" in the file "would have triggered the opening of a work order," which would have been retained in electronic form in the AS400 system and produced in discovery. (*Id.*) Ahern argues that it would not have been required to preserve the physical file, because it was not on notice of potential litigation resulting from Plaintiff's accident in 2017. (*Id.* at 9-10.)

"Once a party reasonably anticipates litigation, it is obligated to suspend its routine document retention/destruction policy and implement a 'litigation hold' to ensure the preservation of relevant documents." *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 511 (D. Md. 2009). This duty "arises 'not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.'" *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013) (citing *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001)). While it is generally "the filing of a lawsuit that triggers the duty to preserve," *Turner*, 736 F.3d at 282, demand letters or other pre-filing communications between parties can also suffice. *See, e.g., Praxair Servs., Inc.*, 632 F. Supp. 2d at 511 (demand letter citing threat of litigation triggered the duty to preserve). Moreover, the duty to preserve "is an independent duty that exists even if the party seeking the evidence did not request a court order for its preservation." *Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 179 (D. Md. 2008). But "equivocal statements of discontent" alone, especially when litigation does not actually begin for a long time, will not put a litigant on notice. *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 623 (D. Colo. 2007). The origin of the duty is not a clear-cut line. Instead, it is fact-bound and often blurry. Interpreting the facts of particular cases, "courts in the Fourth Circuit have found that the receipt of a demand letter, a request for evidence preservation, a threat

7

of litigation, or a decision to pursue a claim will all trigger the duty to preserve evidence." *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 106 (E.D. Va. 2018). But "of course, the absence of these things 'does not vitiate the independent obligation of an adverse party to preserve . . . information if th[at] party knows or should know of impending litigation.'" *Id.*

The mere fact an Ahern representative went to the site of an accident two years before Plaintiff filed his suit in state court (ECF No. 71 at 2-3; ECF No. 1-1 at 5) could possibly have triggered Ahern's duty to suspend ordinary document disposal procedures and preserve existing documents. But because this issue has not been fully briefed, the court need not decide it today. To the extent any preserved responsive documents, whether held in physical or electronic form, have not yet been produced, Ahern is ordered to do so immediately.

## IV.    CONCLUSION

After careful consideration, the court **GRANTS** Plaintiff's Second Motion to Compel as set forth herein with respect to any evidence that has not yet been produced. (ECF No. 63.) Defendant shall provide responses within fourteen days of this Order's entry.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

February 24, 2022
Columbia, South Carolina